# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DION HARDAWAY,

        Plaintiff,         Civil Action No. 05-70362

                               District Judge Avern Cohn

v.                                 Magistrate Judge R. Steven Whalen

HAGGERTY, *et al.*

        Defendants.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff Dion Hardaway, a prison inmate in the custody of the Michigan Department of Corrections (MDOC), has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. §1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc, *et.seq* . Before the Court is Defendants Carl Tabb, James Haggerty, Robert Mulvaney, William Overton, Michael Nowak, and Vincent Gauci's Motion for Summary Judgment or Dismissal [Docket #43] which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I make the following recommendations:

      1. That motion to dismiss claims against Tabb, Haggerty, Mulvaney,  Nowak, and

Gauci in their official capacity pertaining Plaintiff's Security Threat Group designation, removed before the inception of this lawsuit, be GRANTED on the basis that the claim is moot.

2. That Defendants' motion for summary judgment be DENIED as to Plaintiff's claims for injunctive relief requesting the removal of the Nation of Gods and Earths' ("NGE's") Security Threat Group designation ("STG") and the MDOC's denial of religious literature to the group's member pursuant to RLUIPA .

3. That Defendants Tabb, Haggerty, Mulvaney, Nowak, and Gauci's motion for dismissal of claims against them in their personal capacities be GRANTED on the basis of qualified immunity.

4. Finally, that the motion for summary judgment be DENIED as to Defendant Overton because he was previously dismissed.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 16, 2005, Plaintiff filed the present action pursuant to 42 U.S.C. §1983 and RLUIPA, 42 U.S.C. §2000cc, *et.seq.,* alleging First Amendment Free Exercise, and Fourteenth Amendment Equal Protection, violations. The incidents that gave rise to this Complaint are alleged to have occurred while the Plaintiff was an inmate at the Ryan Correctional Facility (RCF) in Detroit, Michigan. *Complaint*, ¶2. Plaintiff states that on April 29, 2002, prison officials seized religious material from his cell and refused to return

---

[1]On June 15, 2006, the district court dismissed Defendant Overton without prejudice, based on Plaintiff's failure to exhaust administrative remedies [Docket #34].

it to him. *Id.*, ¶¶14-16. The materials were related to the Nation of Gods and Earths / Five Percenters ("NGE"), a group Plaintiff states is religious in nature. On June 6, 2002, Plaintiff received notification that the NGE was classified as a Security Threat Group ("STG"), and that Plaintiff was found to be a STG member, and thus subject to disciplinary action based on his possession of documents, publications and symbols related to the NGE. *Id.*, ¶¶ 16-18. Plaintiff alleges that as the result of his STG designation, he "is not allowed to work, go to school, possess any NGE materials, communicate with any NGE members incarcerated or not, nor participate in any NGE daily rituals and/or activities (e.g. studying lessons)." *Id.*, ¶28. Plaintiff also alleges that in order to remove his STG designation, he was coerced into signing forms renouncing his membership in a religious group. *Id.*, ¶¶ 27, 33. Plaintiff's response to the present motion acknowledges that the STG designation has now been removed. *Docket #47* at 1. Otherwise, Plaintiff seeks injunctive relief in the form of the removal of STG designation from the NGE, and requiring Defendants "to allow Plaintiff to possess literature and any publication coming from the NGE that is not violative of any other MDOC policy and procedure." *Complaint* at 8.

On May 30, 2006, the undersigned filed a Report and Recommendation (R&R), recommending that the Complaint be dismissed in its entirety based on Plaintiff's failure to exhaust administrative remedies as to all claims under the former law of this Circuit. *Jones Bey v. Johnson,* 407 F.3d 801 (6th Cir. 2005). *Docket #32.* On June 6, 2006, the Sixth Circuit effectively overturned *Jones Bey* by holding that the failure to exhaust all claims and Defendants does not subject the entire action to dismissal. *Spencer v. Bouchard*, 449 F.3d

721, 726 (6th Cir. 2006). Accordingly, the district court granted the motion as to Defendant Overton based on a failure to exhaust, but denied as to all other inmates.[2] *Docket #34.*

Plaintiff names as Defendants the following persons: (FNU) Haggerty, a corrections officer; (FNU) Gauci, a corrections sergeant; Carl Tabb, an Inspector at RCF; Michael Nowak, an Acting Inspector at RCF; David Smith, Warden of RCF; Robert Mulvaney, the STG Coordinator for the MDOC; and William Overton, then-Director of the MDOC. All are sued in their individual and official capacities.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[2] Defendant Smith was never served. *Docket #22.*

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at

252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. ANALYSIS

### Applicable Law

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). "RLUIPA prohibits any government from imposing a 'substantial burden on the religious exercise' of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest." *Porter v. Caruso,* 479 F.Supp.2d 687, 697 (W.D.Mich.2007); 42 U.S.C. § 2000cc-1(a). "The threshold inquiry under RLUIPA is whether the challenged governmental action substantially burdens the exercise of religion. The burden of proving the existence of a substantial interference with a religious exercise rests on the religious adherent." *Baranowski v. Hart,* 486 F.3d 112, 124 (5th Cir. 2007); 42 U.S.C. § 2000cc-2(b).

On May 31, 2005 the Supreme Court reversed the Sixth Circuit's November 7, 2003 decision in *Cutter v. Wilkinson,* 349 F.3d 257 (6th Cir.2003). *Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). The Court held that the portion of RLUIPA applying to institutionalized persons does did not violate the Establishment Clause, finding further that although the Act adopts a "compelling interest standard," it "does not elevate accommodation of religious observances over an institution's need to maintain order and

safety. An accommodation must be measured so that it does not override other significant interests." *Cutter,* 544 U.S. at 710, 125 S.Ct. at 2115. The Court noted further that "[l]awmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions and anticipated that courts would apply the Act's standard with due deference to prison administrators' experience and expertise." *Id.*

### A. Claims Against Defendants in Their Official Capacities[3]

#### 1. 42 U.S.C. § 1983

Generally, claims against defendants in their official capacities, *i.e*, in their capacity as agents of the state under 42 U.S.C. §1983, are subject to dismissal on the basis that "[t]he United States Supreme Court has specifically held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Price v. Caruso,* 451 F.Supp.2d 889, 902 (E.D.Mich.2006); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Nonetheless, "immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v. Rising,* 427 F.3d 351, 358 -359 (6th Cir. 2005); *Ex parte Young,* 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908). Further, official capacity claims do not falter on a defendant's lack of personal involvement. "Official capacity suits, generally

---

[3] Insofar as the present action requests injunctive relief under either §1983 or RLUIPA, Plaintiff's claims against Defendants in their official capacities are partially dismissible on the basis that in December, 2004 Plaintiff requested and was granted a removal of a STD on the condition that he would renounce his affiliation with the NGE. Plaintiff's request for removal of the designation is therefore moot. *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir. 1996).

represent only another way of pleading an action against an entity of which an officer is an agent." *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1245 (6th 1989); *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). *See also Miller v. Calhoun County,* 408 F.3d 803, 817 (6th Cir. 2005)("Accordingly, as it appears that [defendants] are being sued in their official capacities, we treat the claims against them as being claims against the County.")

However, substantively, Plaintiff's claims for injunctive relief on the basis of equal protection and due process violations under §1983 fail on the basis that the Sixth Circuit has found that an STG designation violates neither equal protection nor due process rights. The "MDOC policy directive regarding the classification of inmates as STG members is rationally related to the legitimate state interest of maintaining order in the prison." *Harbin-Bey v. Rutter,* 420 F.3d 571, 576 (6th Cir. 2005); *See also Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 136, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) ("There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence"). Citing *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Sixth Circuit also rejected the Harbin-Bey's due process arguments, noting that the STG designation did not "activate a due process right." *Harbin-Bey, supra* at 577. *See also Fraise v. Terhune*, 283 F.3d 506, 522 (3rd Cir. 2002)( rejecting the plaintiff's claim that his due process rights had been violated by failing to give "adequate notice" prior to the NGE's STG

designation: "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.").

## 2. RLUIPA

RLUIPA states in pertinent part:

"No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest."

42 U.S.C. § 2000cc-1(a).

Contrary to Defendants' argument, RLUIPA claims against Defendants in their official capacities are cognizable. "The language of RLUIPA anticipates" a state's waiver of "its Eleventh Amendment immunity by consenting to suit." *Price, supra*, 451 F.Supp.2d at 902; *Benning v. Georgia,* 391 F.3d 1299, 1305 (11th Cir.2004); 42 U.S.C.A. § 2000cc-2(a), § 2000cc-5(4)(a)(I). RLUIPA states that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government," where a government is defined as "a State, county, municipality, or other governmental entity created under the authority of a State." *Id*. "Congress unambiguously required states to waive their sovereign immunity from suits filed by prisoners to enforce RLUIPA." *Price* at 902; *Benning,* at 1305

Various courts have noted that the NGE has been repeatedly associated with prison violence. *See Fraise*, *supra,* 283 F.3d 506, 514-515 (upholding a district court finding "that decision to designate the Five Percent Nation as an STG was rationally related to this legitimate and neutral government objective."). *See also Harbin-Bey, supra,* 420 F.3d at 576, citing *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters,* 174 F.3d 464, 469(4th Cir.1999); *Marria v. Broaddus,* 2004 WL 1724984, *2 (S.D.N.Y. 2004).

Specifically, Plaintiff challenges the NGE's ongoing designation as an STG as well as prohibitions on the possession of "literature and any publication coming from the NGE, that is not violative (sic) of any other MDOC policy and procedure." *Complaint* at 8. A question of fact exists, first, as to whether the policy directive restricting NGE activity is subject to heightened scrutiny under RLUIPA, and second, if so, whether prohibitions placed on the possession of NGE material places a "substantial burden" on Plaintiff's religious practices.

On July 31, 2003, the court in *Marria v. Broaddus,* 2003 WL 21782633, *1 (S.D.N.Y. 2003) held that the "plaintiff's sincerely-held beliefs as a member of the Nation [NGE] are entitled to First Amendment and RLUIPA protection." While the *Marria* Court acknowledged "some case law in tension" between its finding and *Fraise, supra,* 283 F. at 506 and *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, supra*, 174 F.3d 464 (4th Cir.1999), it noted that those decisions (similarly to *Harbin-Bey*,) treated the NGE/Five Percenters as a security threat group, then applied the

"more deferential standard of review" ("reasonably related to a "legitimate penological interests"), rather "than the RLUIPA analysis we apply in this decision" *Marria,* WL 21782633, *18; *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). The *Marria* court, proceeding with the more stringent RLUIPA standard, determined that defendants had failed to establish that the ban on NGE material and activities was the least restrictive means of furthering a compelling security interest. *Marria*, at *18.

In the present case, at minimum, a question of fact exists as to whether the NGE is RLUIPA-protected or simply a gang. Plaintiff's response to the present motion is accompanied by NGE literature that is theological or philosophical rather than incitive in tone, supporting his contention that the NGE members' "sincerely held beliefs" entitle the group to RLUIPA protection. As in *Marria*, this Court notes that the fact that individual NGE members may be involved in gang activities does not necessarily justify the wholesale ban on the organization's material. Even assuming for the sake of argument that certain NGE members pose a potential security threat, this does not justify "the decision to treat [NGE] solely as a gang under RLUIPA." *Marria*, at 18. Here, the MDOC's all-inclusive ban would appear to defeat the contention that it is employing the "least restrictive means of furthering a compelling security interest." Plaintiff further notes that the sweeping ban on "NGE" literature additionally burdens the group's members by denying them access to mainstream religious tracts generally available to non-NGE inmates. Accordingly, Plaintiff's request for the removal of the STG designation and the availability of NGE materials under

RLUIPA should not be dismissed.

### B. Claims Against Defendants in Their Personal Capacities

#### 1. Defendants Tabb, Haggerty, Mulvaney, Nowak, and Gauci are Subject to the Dismissal in Their Personal Capacities on the Basis of Qualified Immunity

Defendants Tabb, Haggerty, Mulvaney, Nowak, and Gauci have forwarded multiple reasons for dismissal in their personal capacities which need not be discussed in light of the fact that they are clearly subject to dismissal on the basis of qualified immunity.[4]

Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. In *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002), the Sixth Circuit set forth a three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) was there a violation of a constitutionally protected right; (2) was that right clearly established at the time; and (3) has the plaintiff alleged and shown by sufficient evidence that what the official allegedly did was objectively unreasonable? "If the plaintiff fails to establish any one of these elements, qualified immunity must be granted."

---

[4]Defendants contend that Plaintiff has not demonstrated personal involvement by Novak or Gauci and further, that Haggerty's search and seizure of Plaintiff's cell does not amount to a constitutional violation. *Docket #43* at 9.

*Meals v. City of Memphis, Tenn.*, — F.3d —, 2007 WL 1989016, *7 (6th Cir. July 11, 2007); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir.2005).

As discussed above, a question of fact remains as to whether the STG designation amounted to a violation of RLUIPA, meeting the first prong of the *Higgason* test. However, Defendants are entitled to qualified immunity because Plaintiff's right to receive NGE material was not clearly established at the time of the alleged violations.[5] *See Perez v. Oakland County*, 466 F.3d 416, 427 (6th Cir. 2006), *citing Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("plaintiff must show that the right was clearly established in light of the specific context of the case, not as a broad general proposition. If reasonable officers could disagree about the lawfulness of the conduct in question, immunity must be recognized.")

Although RLUIPA was signed into law in September, 2000, the matter of reconciling its prohibition on substantially burdening religious practices with the compelling interest in maintaining institutional security remained in flux until after the filing of this suit.[6]

---

[5]

*But see Porter v. Caruso,* 479 F.Supp.2d 687, 698 -699 (W.D.Mich.2007), *citing Figel v. Overton,* 2006 WL 2521600 at *2 (W.D.Mich., Aug.30, 2006), finding that the defendant's denial of a request to purchase and wear an ankh cross stated a claim under RLUIPA, noting that "'as soon as the RLUIPA was signed into law [September, 2000] it became clearly established law in this country.'"

[6]

As discussed, *supra*, on November 7, 2003, the Sixth Circuit found that RLUIPA violated the Establishment Clause. *Cutter, supra,* 349 F.3d 257 (6th Cir.2003). This ruling was reversed by the Supreme Court in *Cutter v. Wilkinson, supra*, on May 30, 2005. While the Circuit's *Cutter* finding does not by itself excuse Defendants' alleged constitutional violations starting in 2001, it illustrates that interpretations of RLUIPA were far from settled.

Significantly, the Sixth Circuit's most factually similar case, *Harbin-Bey, supra*, issued in 2005, found the absence of a constitutional violation in STG designations and the accompanying ban on unauthorized material. *See also Perez*, *supra*, 466 F.3d at 427; *Lavado v. Keohane,* 992 F.2d 601, 606 (6th Cir.1993); *Poe v. Haydon,* 853 F.2d 418, 423-24 (6th Cir.1988) ("In order to determine if the law is clearly established such that a reasonable official could determine that her actions were unlawful, we look principally to the law of this circuit and to the Supreme Court.") The fact that the court in *Harbin-Bey* found the absence of either equal protection or due process violations establishes that Defendants are entitled to qualified immunity as to the §1983 claims; likewise, despite the fact that the court did not perform a RLUIPA analysis, its treatment of factually similar cases further suggests that applicable rights under RLUIPA were not clearly established. In any case, in the absence of clear circuit law guidance, Defendants' actions in creating and implementing the STG designation of the NGE and the accompanying ban on its material was not objectively unreasonable.

2. **Defendant Overton**

Although Overton has been included in the present motion, the district court dismissed Overton on June 15, 2006 without prejudice based on Plaintiff's failure to exhaust

his administrative remedies. *Docket #34* at 4. The Court does not presently have jurisdiction over claims against him and therefore cannot grant the his requested relief for dismissal with prejudice. *See Dillon-Barber v. Regents of University of Michigan,* 51 Fed.Appx. 946, 951, 2002 WL 31684697, *5 (6th Cir. 2002); *Meinecke v. H & R Block of Houston,* 66 F.3d 77, 82 (5th Cir.1995)(finding that "the district court lacked jurisdiction to dismiss with prejudice those claims that had previously been dismissed without prejudice.")

## IV. CONCLUSION

For the reasons set forth above, I make the following recommendations:

1. That the claims against Tabb, Haggerty, Mulvaney, Nowak, and Gauci in their official capacity pertaining Plaintiff's Security Threat Group designation, removed before the inception of this lawsuit, be GRANTED on the basis that the claim is moot.

2. Defendants motion for summary judgment should be DENIED as to claims for injunctive relief requesting the removal of the NGE's designation as an STG and the MDOC's denial of religious literature to the group's member pursuant to RLUIPA.

3. Defendants Tabb, Haggerty, Mulvaney, Nowak, and Gauci motion for dismissal for claims against them in their personal capacities should be GRANTED on the basis of qualified immunity.

4. Finally, the motion should be DENIED as to Defendant Overton on the basis that he was previously dismissed.

Any objections to this Report and Recommendation must be filed within ten (10)

days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.

The response shall address specifically, and in the same order raised, each issue contained within the objections.

                              s/R. Steven Whalen
                              R. STEVEN WHALEN
                              UNITED STATES MAGISTRATE JUDGE

Dated: August 8, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 8, 2007.

s/Susan Jefferson

Case Manager
