UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DION HARDAWAY,

    Plaintiff,

v.                                                                                          Case No. 05-70362

JAMES HAGGERTY, VINCENT GAUCI                          HONORABLE AVERN COHN
CARL TABB, MICHAEL NOWAK,
DAVID SMITH, ROBERT MULVANEY, and
WILLIAM OVERTON,

    Defendants.

_____/

# MEMORANDUM AND ORDER
# ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION (Doc. No. 90)
# AND
# DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT (Doc. Nos. 76, 77)

## I. Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Dion Hardaway claims defendants, employees of the Michigan Department of Corrections (MDOC), have violated his right to practice his religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc. The incidents giving rise to the complaint are alleged to have occurred while plaintiff was an inmate at Ryan Correctional Facility (Ryan).[1] In general terms, the case concerns the confiscation of materials related to the Nation of Gods and Earths/Five Percenters (NGE), a group that has been designated by the MDOC as a Security Threat

---

[1] According to Michigan's Offender Tracking Information System, plaintiff is currently at Alger Correctional Facility.

Group (STG). Plaintiff is a member of NGE and says it is a religious group. He wants to have the STG classification on the NGE removed and be able to possess its literature, particularly its primary publication The Five Percenter. Defendants are: Carl Tabb, James Haggerty, Michael Novak, and Robert Mulvaney, all of whom are corrections officers at Ryan.

The matter was referred to a magistrate judge for pre-trial proceedings. As will be explained, the parties eventually filed cross motions for summary judgment. The magistrate judge issued a report and recommendation (MJRR) that plaintiff's motion be granted and defendants' motion be denied. Before the Court are defendants' objections to the MJRR (Doc. No. 91). For the reasons that follow, the MJRR will be adopted in part and rejected in part and both parties' motions for summary judgment will be denied.

## II. Background

Earlier in the case, defendants filed a motions to dismiss or for summary judgment which the magistrate judge recommended be granted in part and denied in part.

The parties objected. On September 27, 2007, the Court entered an Order Adopting the Report and Recommendation, Granting in Part and Denying in Part Defendants' Motions and Directing the Appointment of Counsel for Plaintiff (Doc. No. 51). The Order made clear that

> [t]he case continues on only plaintiff's claim for injunctive relief (1) requesting the removal of the Nation of Gods and Earths/Five Percenters (NGE) Security Threat Group (STG) designation and (2) the MDOC's denial of religious literature to the group under RLUIPA.

Thereafter, plaintiff obtained counsel and the parties engaged in discovery.

Following discovery, both parties filed motions for summary judgment, as noted above. At the hearing on defendants' objections to the MJRR, the Court invited the parties, particularly defendants, to file a supplemental paper detailing the process by which the MDOC designated the NGE to be a STG. The supplemental filing request came as a result of the Court's inquiry as to whether the MDOC followed proper procedures for the designation. The Court also set another hearing to take place after the filing of the supplemental papers. The supplemental papers have been received, the Court had a second hearing, and the matter is now ready for decision.[2] For the reasons that follow, the MJRR will be adopted in part and rejected in part and both parties motions for summary judgment will be denied.

### III. RLUIPA

RLUIPA prohibits prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). Furthermore, ' "religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). A plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion and (2) that the challenged policy or practice substantially burdens that exercise. 42 U.S.C. § 2000cc-2(b). Once a plaintiff establishes a prima facie case, the

---

[2]Following the hearing, the Court issued a Preliminary Injunction which enjoined defendants from prohibiting plaintiff from possessing NGE literature until further order of the Court. See Preliminary Injunction, filed December 23, 2009 (Doc No. 97).

defendant bears the burden of persuasion on whether the policy or practice is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a)).

As such, the test under RLUIPA is:

1. There must be a substantial burden on religious exercise
   * plaintiff has the burden to show a religious exercise
2. There must be a compelling governmental interest for the burden
   * defendant bears the burden to assert a compelling interest
3. The interest must be advanced by the least restrictive means
   * defendant bears the burden of showing least restrictive means

## IV. The MJRR

The magistrate judge framed the key issue as follows:

> If NGE is a "religion," then the MDOC's decision to classify it as a STG and to ban distribution of its publication, The Five Percenter and other literature, are subject to the demanding scrutiny of RLUIPA. On the other hand, if NGE is merely a secular "gang," then it is not protected by RLUIPA.

Both parties submitted expert affidavits on the issue of whether NGE is a religion. After digesting the record, the magistrate judge concluded that NGE is in fact a religion. As such, the magistrate judge found that the wholesale ban on distribution of its materials, including The Five Percenter, imposes a substantial burden on the exercise of plaintiff's religion. Therefore, defendants had the burden to show that the designation of NGE as a STG and the total ban on The Five Percenter advanced a compelling governmental interest and that the restriction was the least restrictive to advance that interest.

The magistrate judge found that although prison security is a compelling governmental interest, defendants had not shown that the NGE presents an existential threat to security. The magistrate judge also concluded that the complete ban on all NGE publications and NGE membership was not the least restriction means to ensure

4

prison security. As such, the magistrate judge found that defendants failed to meet their burden with respect to part three of the RLUIPA analysis and plaintiff was entitled to summary judgment.

Importantly, the magistrate judge also said:

> . . . I do not suggest that the MDOC is precluded from placing any restrictions whatsoever on the NGE or any other religious group. For example, based on Defendants' evidence . . . they may be entitled, under RLUIPA, to restrict or limit group meetings of NGE members. That question, however, is not before the Court. The only issue is whether the Plaintiff is entitled to injunctive relief regarding (1) the removal of the NGE's STG designation, and (2) the MDOC's denial of religious literature to the group under RLUIPA.

MJRR at p. 17-18.

## V. Defendants' Objections to the MJRR

A district court must conduct a de novo review of the parts of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge. Id. The requirement of de novo review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure." United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985). Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[] that the district judge would be the final arbiter" of a matter referred to a magistrate judge. Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987). Defendants raise three objections which are discussed in turn below.

### A. Whether NGE is a religion

Defendants first say that the magistrate judge erred in finding that the NGE is a

5

religion. Defendants essentially present the same arguments considered and rejected by the magistrate judge. No useful purpose would be served by rehashing them here. The magistrate judge recognized that determining whether a belief system is a religion is no easy task. Indeed, "Judges are not oracles of theological verity." Africa v. Commonwealth of Pennsylvania, 662 F.2d 1025, 1030 (3d Cir. 1981). However, the magistrate judge carefully waded through the record and determined that the NGE's ideology is religious in nature and deserving of RLUIPA protection. The Court agrees with the magistrate judge on this point. In so doing, the Court also agrees with the magistrate judge that plaintiff has established that the designation of the NGE as a STG and the total ban on The Five Percenter and NGE literature imposes a substantial burden on plaintiff's religious exercise. Thus, plaintiff has meet his burden on the first step in the RLUIPA analysis.

B. Whether A Ban is the Least Restrictive Means

Defendants next objection is that the magistrate judge erred in finding they failed to meet their burden of showing that a complete ban on NGE literature was the least restrictive means of advancing their asserted interest of prison security.

The reason the Court requested supplemental papers showing how the NGE became to be designated as a STG was to further address the remaining parts of the RLUIPA analysis: identification of a compelling interest and the least restrictive means of advancing that compelling interest. The focus of the case by the parties and the magistrate judge has been whether the NGE is a religion which implicates only the first part of the test, i.e. whether the NGE is a "religious exercise." It seemed that once it was established whether the NGE was a religion or a gang, then the rest of the RLUIPA

analysis simply fell into place in favor of plaintiff. The Court does not see it that way.

As to the second part of the test, defendants have asserted that the designation of the NGE as a STG was based on prison security. The Supreme Court has said that the security concerns of prison officials "deserve 'particular sensitivity.'" Smith v. Ozmint, 578 F.3d 246, 252 (4th Cir. 2009) (quoting Cutter v. Wilkinson, 544 U.S. 709, 722 (2005)). "To meet its burden to show a compelling interest, [Defendants'] 'first job' is 'to take the unremarkable step of providing an explanation for the policy's restrictions that takes into account any institutional need to maintain good order, security, and discipline or to control costs.'" Id. (quoting Lovelace v. Lee, 472 F.3d 174, 190 (4th Cir. 2006)). Generally, "[p]rison safety and security are compelling government interests." Singson v. Norris, 553 F.3d 660, 662 (8th Cir. 2009) (citing Fegans v. Norris, 537 F.3d 897, 906 (8th Cir.2008)). Nevertheless, "[e]ven in light of the substantial deference given to prison authorities, the mere assertion of security ... is not, by itself, enough for the Government to satisfy the compelling governmental interest requirement." Washington v. Klem, 497 F.3d 272, 283 (3d Cir. 2007). Rather, prison officials must supply adequate record evidence that the particular security concerns that prompted the policy are compelling and are advanced by their policy. See Smith, 578 F.3d at 252 (concluding prison officials failed to provide adequate evidentiary support for their assertion that their security concerns constituted a compelling governmental interest); Lovelace, 472 F.3d at 190-91 (same).

Here, defendants contend that literature related to the NGE, including The Five Percenter, compromises prison security. However, notably absent from the record is any evidence of even a single instance of an inmate using NGE materials for any

7

subversive activities at any MDOC institution. See Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 989 (8th Cir. 2004) ("The threat of racial violence is of course a valid security concern, but to satisfy RLUIPA's higher standard of review, prison authorities must provide some basis for their concern that racial violence will result from any accommodation of [an inmate's] request." (citing Ochs v. Thalacker, 90 F.3d 293, 296-97 (8th Cir.1996)).

The analysis, in the Court's view, must begin with the definition of a STG. Under MDOC Policy Directive 04.04.113:

> A. An STG is a group of prisoners designated by the Director as possessing common characteristics which distinguish them from other prisoners or groups of prisoners and which, as a discrete entity, poses a threat to staff or other prisoners or to the custody and security of the facility.
> B. In order to proactively manage STGs, staff must be aware of methods of identification, the threat characteristics of the various STGs, management strategies, and tools to be used to manage such prisoners.
> C. Effective monitoring of STG activity assists in the prevention of violence and ensure the overall security of the facility. The strategic intelligence gained through monitoring is critical to understanding the group dynamics involved in the introduction of contraband, escape plots, and violence related to turf disputes, debt collections, and other STG influenced activities. However, it is crucial that such monitoring be conducted in accordance with applicable Department policies.

Here, the NGE was designated as a STG under this directive on November 28, 2001 by Bill Martin, the Director of the MDOC at the time. The record contains the document signed by Martin. The record also contains materials which were apparently submitted to Martin for his consideration of the NGE being designated as a STG. These materials included a memorandum from Robert Mulvany, Central Office STG Coordinator, who notes that the South Carolina Department of Corrections designated the NGE's as a STG. For more recent evidence supportive of the STG designation, the

8

record contains the affidavit of Patricia Caruso, Director of the MDOC who states in part that "[t]he Nation of Gods and Five Percenters is still a Security Threat Group in the MDOC based on their ideology."  As the magistrate judge noted, this statement is problematic because it refers to the NGE's ideology which has been determined to be worthy of religious protection.  Overall, the Court does not find that the record contains sufficient evidence to show whether the STG designation of the NGE advances prison security or not.  As such, the second part of the RLUIPA test has not been satisfied sufficient to warrant summary judgment to plaintiff.

Moreover, even assuming that the threat to prison security from the presence of NGE literature constitutes a compelling interest, the record does not establish whether defendants have employed the least restrictive means to address that concern.  "In other strict scrutiny contexts, the Supreme Court has suggested that the Government must consider and reject other means before it can conclude that the policy chosen is the least restrictive means."  Washington, 497 F.3d at 284 (citing Warsoldier v. Woodford, 418 F.3d 989, 999 (9th Cir. 2005) (in turn citing United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 824 (2000).  Thus, in order to carry their burden with respect to summary judgment, prison officials generally must demonstrate they considered and rejected the efficacy of less restrictive measures before adopting the challenged policy or practice.  Id.; see also Smith, 578 F.3d at 254 (vacating grant of summary judgment where prison officials failed to demonstrate why forcible shaving, rather than some lesser restriction, was necessary to enforce grooming policy).

The record is simply deficient in this regard.  While the magistrate judge concluded that the deficiencies tilted in plaintiff's favor, the Court finds the deficiencies

render summary judgment inappropriate for either party.

## C. Mootness

Defendants' last objection is that the magistrate judge erred in failing to address mootness. That is, whether certain defendants should be removed because plaintiff is no longer housed at Ryan. According to defendants, the only defendant who should remain in the case is Mulvaney, the STG coordinator for the MDOC and the only defendant with "department wide authority." In response, plaintiff says it is not opposed to dismissing some defendants but has not been given sufficient proof as to who is responsible for the STG designation and returning plaintiff's materials. The Court expects that this objection can be resolved by the parties in agreeing on the proper defendant which, in the Court's view, is the director of the MDOC inasmuch as plaintiff is challenging an MDOC policy and seeking injunctive relief.[3]

## VI. Other Cases

The Court is mindful that other courts have addressed the issue of the NGE as a STG. Most notably, in Marria v. Broaddus, 2003 WL 21782633 (S.D.N.Y. 2003), the district court held that the NGE was a religion and entitled to protection under RLUIPA and that the complete ban on the group's literature violated RLUIPA. That decision, however, followed a trial. In Versatile v. Johnson, 2009 WL 5206437 (E.D. Va. Dec. 31, 2009), plaintiff claimed that his rights under RLUIPA were violated by defendants' ban of NGE literature, including The Five Percenter and that defendants failed to comply with regulations to process his request that the NGE be recognized as a religion. The district

---

[3]Given the nature of plaintiff's claim, the fact he has been transferred to a different facility does not render his claim moot.

court denied cross motions for summary judgment.

Finally, and perhaps most significantly, in <u>Johnson v. Stewart</u>, 2008 WL 828086 (W.D. Mich. March 26, 2008), the district court, adopting an MJRR, held that the plaintiff/prisoner's First Amendment rights were not violated by the MDOC's rejection of <u>The Five Percenter</u>. Implicit in the decision was that the STG designation on the NGE was proper. In plaintiff's objections to the MJRR, he attempted to raise claim under RLUIPA. The district court declined to consider a claim, but found that if preserved, the claim was not "plainly frivolous." The case is on appeal in the Court of Appeals for the Sixth Circuit. Although the thrust of the case is the First Amendment, defendants' brief on appeal argues, inter alia, that plaintiff cannot make out a RLUIPA claim. Clearly, even if the Sixth Circuit declines to address a RLUIPA claim, the issue of the NGE being a STG is before the court, at least in the First Amendment context. The impact of a decision in <u>Johnson</u> is not yet known.

## VII. Conclusion

For the reasons stated above, the MJRR is ADOPTED IN PART AND REJECTED IN PART and both parties' motions for summary judgment are DENIED. The case continues for trial on the issues of whether

- The asserted compelling governmental interest of prison security justifies designating the NGE as a STG
- Whether the designation of the NGE as a STG and complete ban on possessing its literature is the least restrictive means of advancing prison security

The Clerk shall schedule a status conference to chart the course of the case to

trial.

    SO ORDERED.

                                          s/Avern Cohn  
                                          AVERN COHN  
                                          UNITED STATES DISTRICT JUDGE

Dated: March 22, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 22, 2010, by electronic and/or ordinary mail.

                                          s/Julie Owens  
                                          Case Manager, (313) 234-5160