UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DION HARDAWAY,

    Plaintiff,

v.                                                                                    Case No. 05-70362

JAMES HAGGERTY, VINCENT GAUCI                   HONORABLE AVERN COHN
CARL TABB, MICHAEL NOWAK,
and ROBERT MULVANEY,

    Defendants.

_____/

**MEMORANDUM AND ORDER
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I.  Introduction

A.

This is a prisoner civil rights case under 42 U.S.C. § 1983.  Plaintiff Dion Hardaway claims defendants, employees of the Michigan Department of Corrections ("MDOC"), have violated his right to practice his religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc.  The incidents giving rise to the complaint are alleged to have occurred while plaintiff was an inmate at Ryan Correctional Facility (Ryan).[1]  In general terms, the case concerns the confiscation of materials published by the Nation of Gods and Earths/Five Percenters ("NGE"), a group that has been designated by the MDOC as a Security Threat Group ("STG").  Plaintiff is a member of NGE and wants to have the STG

___

[1]According to Michigan's Offender Tracking Information System, plaintiff is currently at Chippewa Correctional Facility.

classification on the NGE removed and have the right to possess its literature, particularly its primary publication, The Five Percenter. Defendants are: James Haggerty, Vincent Gauci, Carl Tabb, Michael Novak, and Robert Mulvaney, all of whom are corrections officers at Ryan.[2]

B.

The matter was referred to a magistrate judge for pre-trial proceedings. As will be explained, the parties eventually filed cross motions for summary judgment. The magistrate judge issued a report and recommendation (MJRR) that plaintiff's motion be granted and defendants' motion be denied. Defendants objected to the MJRR. The Court adopted the MJRR in part, rejected it in part, and denied the cross motions for summary judgment. See Memorandum and Order filed March 22, 2010 (Doc. 99). In that order, the Court stated:

> The case continues for trial on the issues of whether:
> 
> - The asserted compelling governmental interest of prison security justifies designating the NGE as a STG
> 
> - Whether the designation of the NGE as a STG and complete ban on possessing its literature is the least restrictive means of advancing prison security

Thereafter, plaintiff served discovery on defendants directed to these issues. Based on defendants' responses and the record, plaintiff again moves for summary judgment. Plaintiff contends there is no genuine issue of material fact that defendants have not satisfied their burden of showing (1) that prison security justified classifying the NGE as

---

[2]Plaintiff also sued William Overton; however, the Court dismissed the claims against him without prejudice. See Doc. 34.

a STG, or (2) that the designation of the NGE as a STG is the least restrictive means of advancing prison security. The Court agrees. Accordingly, plaintiff's motion will be granted.

## II. Background

### A.

Defendants initially filed dispositive motions which the magistrate judge recommended be granted in part and denied in part. Both parties objected. On September 27, 2007, the Court entered an Order Adopting the Report and Recommendation, Granting in Part and Denying in Part Defendants' Motions and Directing the Appointment of Counsel for Plaintiff (Doc. No. 51). The Order made clear that

> [t]he case continues on only plaintiff's claim for injunctive relief (1) requesting the removal of the Nation of Gods and Earths/Five Percenters (NGE) Security Threat Group (STG) designation and (2) the MDOC's denial of religious literature to the group under RLUIPA.

Thereafter, the Court appointed counsel for plaintiff and the parties engaged in discovery. Following discovery, both parties filed motions for summary judgment. At the hearing on defendants' objections to the MJRR, the Court invited the parties, particularly defendants, to file a supplemental paper detailing the process by which the MDOC designated the NGE to be a STG. The supplemental filing request came as a result of the Court's inquiry as to whether the MDOC followed proper procedures for the designation. The Court also set another hearing to take place after the filing of the supplemental papers. The supplemental papers were received and the Court had a second hearing. Following the hearing, the Court adopted in part and rejected in part in

3

the MJRR and denied the cross motions for summary judgment.

The parties engaged in discovery, after which plaintiff filed the instant motion, again requesting summary judgment.

### B. RLUIPA

RLUIPA prohibits prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). Furthermore, "'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). A plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion and (2) that the challenged policy or practice substantially burdens that exercise. 42 U.S.C. § 2000cc-2(b). Once a plaintiff establishes a prima facie case, the defendant bears the burden of persuasion on whether the policy or practice is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

As such, the test under RLUIPA is:

1. There must be a substantial burden on religious exercise
   * plaintiff has the burden to show a religious exercise
2. There must be a compelling governmental interest for the burden
   * defendant bears the burden to assert a compelling interest
3. The interest must be advanced by the least restrictive means
   * defendant bears the burden of showing least restrictive means

### C. The Court's March 22, 2010 Order

Previously, the Court found triable issues on whether defendants' had asserted a

4

compelling interest and whether that interest was advanced by the least restrictive means. The Court stated:

> Defendants next objection is that the magistrate judge erred in finding they failed to meet their burden of showing that a complete ban on NGE literature was the least restrictive means of advancing their asserted interest of prison security.
>
> The reason the Court requested supplemental papers showing how the NGE became to be designated as a STG was to further address the remaining parts of the RLUIPA analysis: identification of a compelling interest and the least restrictive means of advancing that compelling interest. The focus of the case by the parties and the magistrate judge has been whether the NGE is a religion which implicates only the first part of the test, i.e. whether the NGE is a "religious exercise." It seemed that once it was established whether the NGE was a religion or a gang, then the rest of the RLUIPA analysis simply fell into place in favor of plaintiff. The Court does not see it that way.
>
> As to the second part of the test, defendants have asserted that the designation of the NGE as a STG was based on prison security. The Supreme Court has said that the security concerns of prison officials "deserve 'particular sensitivity.'" Smith v. Ozmint, 578 F.3d 246, 252 (4th Cir. 2009) (quoting Cutter v. Wilkinson, 544 U.S. 709, 722 (2005)). "To meet its burden to show a compelling interest, [Defendants'] 'first job' is 'to take the unremarkable step of providing an explanation for the policy's restrictions that takes into account any institutional need to maintain good order, security, and discipline or to control costs.' " Id. (quoting Lovelace v. Lee, 472 F.3d 174, 190 (4th Cir. 2006)). Generally, "[p]rison safety and security are compelling government interests." Singson v. Norris, 553 F.3d 660, 662 (8th Cir. 2009) (citing Fegans v. Norris, 537 F.3d 897, 906 (8th Cir.2008)). Nevertheless, "[e]ven in light of the substantial deference given to prison authorities, the mere assertion of security ... is not, by itself, enough for the Government to satisfy the compelling governmental interest requirement." Washington v. Klem, 497 F.3d 272, 283 (3d Cir. 2007). Rather, prison officials must supply adequate record evidence that the particular security concerns that prompted the policy are compelling and are advanced by their policy. See Smith, 578 F.3d at 252 (concluding prison officials failed to provide adequate evidentiary support for their assertion that their security concerns constituted a compelling governmental interest); Lovelace, 472 F.3d at 190-91 (same).
>
> Here, defendants contend that literature related to the NGE, including The Five Percenter, compromises prison security. However, notably absent from the record is any evidence of even a single instance of an inmate using NGE materials for any subversive activities at any MDOC institution. See Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 989 (8th Cir. 2004) ("The threat of racial violence is of course a valid security concern, but to satisfy RLUIPA's higher standard of review, prison authorities must provide some basis for their concern that racial violence will result from any accommodation of [an inmate's] request."

(citing Ochs v. Thalacker, 90 F.3d 293, 296-97 (8th Cir.1996)).

The analysis, in the Court's view, must begin with the definition of a STG. Under MDOC Policy Directive 04.04.113:

> A. An STG is a group of prisoners designated by the Director as possessing common characteristics which distinguish them from other prisoners or groups of prisoners and which, as a discrete entity, poses a threat to staff or other prisoners or to the custody and security of the facility.
> B. In order to proactively manage STGs, staff must be aware of methods of identification, the threat characteristics of the various STGs, management strategies, and tools to be used to manage such prisoners.
> C. Effective monitoring of STG activity assists in the prevention of violence and ensure the overall security of the facility. The strategic intelligence gained through monitoring is critical to understanding the group dynamics involved in the introduction of contraband, escape plots, and violence related to turf disputes, debt collections, and other STG influenced activities. However, it is crucial that such monitoring be conducted in accordance with applicable Department policies.

Here, the NGE was designated as a STG under this directive on November 28, 2001 by Bill Martin, the Director of the MDOC at the time. The record contains the document signed by Martin. The record also contains materials which were apparently submitted to Martin for his consideration of the NGE being designated as a STG. These materials included a memorandum from Robert Mulvany, Central Office STG Coordinator, who notes that the South Carolina Department of Corrections designated the NGE's as a STG. For more recent evidence supportive of the STG designation, the record contains the affidavit of Patricia Caruso, Director of the MDOC who states in part that "[t]he Nation of Gods and Five Percenters is still a Security Threat Group in the MDOC based on their ideology." As the magistrate judge noted, this statement is problematic because it refers to the NGE's <u>ideology</u> which has been determined to be worthy of religious protection. Overall, the Court does not find that the record contains sufficient evidence to show whether the STG designation of the NGE advances prison security or not. As such, the second part of the RLUIPA test has not been satisfied sufficient to warrant summary judgment to plaintiff.

Moreover, even assuming that the threat to prison security from the presence of NGE literature constitutes a compelling interest, the record does not establish whether defendants have employed the least restrictive means to address that concern. "In other strict scrutiny contexts, the Supreme Court has suggested that the Government must consider and reject other means before it can conclude that the policy chosen is the least restrictive means." Washington, 497 F.3d at 284 (citing Warsoldier v. Woodford, 418 F.3d 989, 999 (9th Cir. 2005) (in turn citing United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 824 (2000). Thus, in order to carry their burden with respect to summary judgment, prison officials generally must demonstrate they considered and

6

>rejected the efficacy of less restrictive measures before adopting the challenged policy or practice. Id.; see also Smith, 578 F.3d at 254 (vacating grant of summary judgment where prison officials failed to demonstrate why forcible shaving, rather than some lesser restriction, was necessary to enforce grooming policy).
>
>The record is simply deficient in this regard. While the magistrate judge concluded that the deficiencies tilted in plaintiff's favor, the Court finds the deficiencies render summary judgment inappropriate for either party.

Order at p. 6-10.

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see Anderson, 477 U.S. at 249–50.

IV. Analysis

A.

Following the Court's March 22, 2010 order, plaintiff served discovery requests specifically addressing whether defendants had considered any lesser restrictive alternatives to the designation of NGE as an STG, and the imposition of the underlying prohibitions. Defendants' responses are attached to plaintiff's motion as follows:

> Plaintiff's Exhibit D – Defendants' Response to Plaintiff's Second Interrogatories
>
> Plaintiff's Exhibit E – Defendants' Response to Plaintiff's Supplemental Request to Produce[3]

In these documents, defendants continue to assert that the STG designation was made out of concern for the safety and security of the MDOC facilities, and that the decision was made using the documents found in Exhibit E. Exhibit E is a compilation of several documents that are identical to documents previously produced by defendants and attached as Exhibit M to plaintiff's initial motion for summary judgment. Defendants refer to Exhibit E as the "file used by former MDOC director Bill Martin used [sic] to validate the NGE as a STG." As the Court previously explained, these documents did not meet defendants' burden of showing that the designation of the NGE as a STG advances prison security. These documents include: (1) a memorandum from Robert Mulvaney, Central Office DTG Coordinator to Dale Bolden, Deputy Director Correctional Facilities Management asking for the NGE to be designated as a STG; (2) various documents which appear to be from the NGE and articles about the NGE; and (3) a

---

[3]Plaintiff filed Exhibits D and E under seal apparently because of the protective order in this case.

memorandum from Daniel Ezrow, Inspector to STG Coordinators which apparently contains a "list of [NGE] works and their meanings."

Exhibit D is defendants' answers to interrogatories. Notably, when asked specifically whether any alternative restrictions for individuals identified as members of NGE were considered prior to the designation of NGE as an STG, defendants admitted that no alternatives were considered. (Exhibit D, answer to interrogatory 3).

In response to plaintiff's motion for summary judgment, defendants contend that there is "overwhelming" evidence to establish that the NGE is a dangerous group which advocates racial supremacy which therefore justifies the STG designation. Defendants again point to (1) the "file" used by former director Bill Martin, (2) the 2003 affidavit of Patricia Caruso used in another case stating that the NGE should be classified as a STG based on their "ideology," and (3) a report prepared by G.V. Corbiscello which details the history of the NGE and opines that it is a violent gang. Defendants argue that this evidence meets its burden of showing that the designation of the NGE as a STG advances the compelling governmental interest in prison security.

As to Corbiscello's report, he is a law enforcement officer with the Monmouth County Sheriff's Office in New Jersey. He opines that the NGE is a gang which presents a security risk. At oral argument, defendants again drew the Court's attention to Corbiscello's report, arguing that the decision to designate the NGE as a STG was appropriate and the least restrictive means for advancing prison security. The report, however, is primarily focused on discussing whether the NGE is a gang. It does not mention or otherwise discuss any other means of controlling NGE members. The report was countered by the affidavit of Dr. Ted Swedenburg, Professor of Anthropology and

Middle East Studies at the University of Arkansas. He opined that the NGE is not a gang, an opinion which the Court, agreeing with the magistrate judge, has adopted. Indeed, the focus in not on whether NGE is a gang, but whether the designation of the NGE as a STG,and complete ban on possessing its literature <u>is the least restrictive means of advancing prison security</u>.

Moreover, all of this evidence, including the Cobiscello report, was before the Court when it denied the parties' cross motions for summary judgment. There is no reason to believe that it is now sufficient to carry defendants' burden. Second, even assuming that defendants have shown a compelling governmental interest in prison security, they must still satisfy the last part of the RLUIPA test–that the designation of the NGE as a STG is the "least restrictive means" of advancing that interest. In order to meet this burden, defendants must show that alternatives besides than classification as a STG were considered. Defendants have not. In fact, defendants do not dispute that they did not consider and reject any other less restrictive measures. In their answers to interrogatories, they did not state that any alternatives were considered prior to the designation of the NGE as a STG.

The question before the Court is whether the designation of the NGE as a STG was the least restrictive means of advancing prison security. To answer this question, the focus must be on the information the MDOC had at the time of the designation in <u>2001</u>, including whether any alternative restrictions were considered. Corbiscello's report was prepared for this litigation and there is no evidence that the MDOC used it in 2001. As has been explained, the MDOC had very little information about the NGE and used, in the magistrate judge's words, "anecdotal evidence" to arrive at a decision that

10

appeared to be "more of a post-hoc rationalization" with regard to the NGE. In other words, the MDOC, looking at articles and various NGE materials, concluded that the NGE was a gang and accordingly designated them as a STG. The affidavit of Patricia Caruso states that the designation was "based on their ideology," which again shows that the NGE was considered a gang. The record simply fails to show evidence that a total ban on NGE literature and all of the other restrictions which accompany a STG designation are the least restrictive means of advancing prison security. It is important to emphasize that in declaring that the STG designation be removed because of defendants not being able to meet the RLUIPA requirements, the Court is not holding that the MDOC is prohibited from placing any restrictions on NGE members. Rather, in order to do so, they must act within the confines of RLUIPA and applicable prison policies.

Finally, defendants rely on Hoevenaar v. Lazaroff, 422 F.3d 366 (6th Cir. 2005) for the proposition that, simply because they proffered Corbiscello's report, the Court must uphold defendants' actions. Such reliance is misplaced. Hoevenaar was a Native American prison inmate that practiced the Native American religion. Growing and keeping his hair long was an essential part of his religious beliefs. Upon transfer to the Madison Correctional Facility, he was required to cut his hair in compliance with grooming regulations, which mandated that hair and hairstyles could not extend over the inmate's ears or shirt color, and could not protrude more than three inches from the scalp. Hoevenaar sued, claiming, in part, a violation of RLUIPA. In response, the defendant presented the testimony of the warden at the facility, who argued that the restriction furthered the governmental interest in identifying prison inmates and

suppressing contraband in prisons. In support of his assertion that there were lesser restrictive measures than the required hair cut, Hoevenaar presented options that would permit him to retain long hair, such as periodic hair searches conducted by prisoners and witnessed by guards, rephotographing inmates with long hair, individual exemptions based on security classification, and allowing select inmates to wear a kouplock. In response, the warden provided specific testimony addressing each of these lesser restrictive alternatives and explained why each of them would compromise the interests in identifying prison inmates and suppressing contraband. The trial court, however, found fault in the Warden's testimony, and held that, based on its own analysis, the option of a kouplock was the least restrictive means of compelling the governmental interest.

On appeal, the Sixth Circuit reversed, noting that the district court erred in not giving appropriate deference to the Warden's testimony and other veterans of the prison system, stating:

> In summary, the district court did not give proper deference to the opinions of these veterans of the prison system. Their testimony provided substantial evidence that the prison's regulations were the least restrictive means necessary of promoting prison safety and security.

Hoevenaar, 422 F.3d at 371.

In Hoevenaar, the Sixth Circuit upheld the statutory mandate of RLUIPA by requiring "detailed evidence, tailored to the situation before the court, that identifies the failings in the alternatives." See Warsolder v. Woodford, 418 F.3d 989, 1000 (9th Cir. 2005). Hoevenaar does not stand for the proposition that once expert testimony is proffered, a court must defer to it ipso facto.

Indeed, in Gordon v. Caruso, 720 F.Supp.2d 896 (W.D. Mich. 2010), defendants made a similar argument. In Gordon, an inmate member of the Asatru religion challenged the MDOC's prohibition on Asatru group worship. Defendants presented the affidavit of Dave Burnett, the special activities coordinator for the MDOC. He stated, similar to this case, that "white supremacists join and use the religion as a cover to spread white supremacist ideology and to recruit converts to the white supremacist ideology." Therefore, to completely prohibit their gathering was the least restrictive means of furthering the interest of safety and security. Id. at 898-99. The plaintiff argued that there was insufficient evidence to conclude that a ban on Asatru group worship was the least restrictive means. Defendants argued, citing Hoevenaar, that the court was required to give deference to the prison officials on the issue of whether the prohibition against group worship was the least restrictive means of furthering the interest in security. The district court rejected this argument, stating:

> Hoevenaar is distinguishable. In that case, the state had offered testimony that the specific alternatives offered by the plaintiff were not workable. . . . In contrast, **Defendants have not offered any evidence demonstrating consideration of any alternatives to the group worship ban. The Court cannot give deference where there is no evidence of a judgment or determination to which the Court can defer**. See Spratt v. R.I. Dep't of Corr., 482 F.3d 33, 42 (1st Cir. 2007) ("[B]efore we can evaluate whether deference is due, we require that prison administrators explain in some detail what their judgment is."); Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 989 (8th Cir. 2004) ("There exists a question of fact as to whether there are means available to MDOC less restrictive than the total preclusion of group worship for CSC members. It is not clear that MDOC seriously considered any other alternatives, nor were any explored before the district court.").

Gordon, 720 F. Supp. 2d at 901 (emphasis added).

As in Gordon, none of the evidence proffered by defendants contains any

reference to any alternatives to the designation of the NGE as an STG. In fact, Corbiscello's report only serves to argue the rejected proposition that the NGE is a gang; it did not address ways to ensure prison safety from such a gang. His report was also countered by plaintiffs by the affidavit of Dr. Ted Swedenburg, who asserts that the NGE is a religion, not a gang. Moreover, the Court has already ruled that the NGE is a religion entitled to protection under RLUIPA, not a gang.

At the end of the day, defendants have offered nothing more than what was already before the Court, with one exception. It is now clear from the record that no other alternatives were considered before designating the NGE as a STG. There is also no evidence that any member of the NGE in the Michigan prison system has posed a security threat because of membership in the NGE. Rather, the decision making process began with the premise that the NGE is a group which advocates racial superiority and therefore is a violent gang. What followed was the conclusion that as a violent gang, it posed a threat to prison security. Finally, due to the threat, the decision was made to designate the NGE as a STG. RLUIPA requires a more thoughtful process. As a result, defendants have not carried their burden under RLUIPA on this record.[4] Plaintiff is entitled to summary judgment.

---

[4] There is one point which neither party has discussed. In its March 22, 2010 order, the Court cited decisions for other courts which have addressed the issue of the NGE as a STG. Once of the cases cited was Johnson v. Stewart, 2008 WL 828086 (W.D. Mich. March 26, 2008). In Johnson, the district court, adopting an MJRR, held that the plaintiff/prisoner's First Amendment rights were not violated by the MDOC's rejection of The Five Percenter. Implicit in the decision was that the STG designation on the NGE was proper. In plaintiff's objections to the MJRR, he attempted to raise claim under RLUIPA. The district court declined to consider a claim, but found that if preserved, the claim was not "plainly frivolous." At the time of the Court's decision denying the parties' cross motions for summary judgment, Johnson was on appeal.

14

A final point. As the magistrate judge noted, this ruling does not suggest that the MDOC is precluded from placing any restrictions whatsoever on the NGE. Moreover, the MDOC may undertake its own sincerity inquiry if plaintiff should seek other accommodations, such as a religious diet or restrictions on his work assignments. The MDOC may also be able to restrict or limit group meetings of NGE members. These issues, however, are not before the Court. The only issue is whether the plaintiff is entitled to injunctive relief regarding (1) the removal of the NGE's STG designation and (2) the MDOC's denial of religious literature to the group under RLUIPA. Defendants have not shown a genuine issue of material fact on which a trier of fact could reasonably find in their favor on these narrower issues.

---

Since that time, the Sixth Circuit issued an unpublished decision affirming the district court. Johnson v. Stewart, No. 08-1521 (6th Cir. May 5, 2010). The decision was issued as a Rule 34 decision. The court agreed that Johnson waived his RLUIPA claim and therefore did not consider it. The court also agreed that Johnson's First Amendment rights were not violated in part because defendants "put forth evidence that the [NGE] was designated as a STG because it holds racial supremacist views and has been linked to violence and gang-related activity in other prison systems." Slip op. at p. 3. Johnson is distinguishable because it was a First Amendment claim and the applicable test is "reasonably related to legitimate penologicial interests," as opposed to the more stringent RLUIPA test of a compelling governmental interest and least restrictive means. It is also not clear what "evidence" was before the court in Johnson. Also the case is not precedential because the opinion is unpublished.

V. Conclusion

For the reasons stated above, plaintiff's motion for summary judgment is GRANTED. An appropriate judgment will enter.

SO ORDERED.

                S/Avern Cohn
                AVERN COHN
                UNITED STATES DISTRICT JUDGE

Dated: February 25, 2011

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 25, 2011, by electronic and/or ordinary mail.

                S/Julie Owens
                Case Manager, (313) 234-5160